The next case on the calendar is Peoples v. Leon. This case is Peoples v. Leon. Good morning, Your Honors. I'm Kevin Hu on behalf of the Parole Board Defendants, and I would like to reserve two minutes of time for rebuttal. This court should reverse the judgment below for either of two independent reasons. First, defendants are entitled to qualified immunity, and second, defendants are separately entitled to absolute immunity. All of them? Only two of them are actively involved in this appeal, Your Honor. There are injunctive claims as to defendant Stanford, which survive the motion of summary judgment, and they are not part of this appeal because there is no basis for an interlocutory appeal on those grounds. So ultimately, regardless of how this panel decides this case, there will be those claims going forward, at least as to defendant Stanford. And you're looking for absolute immunity for Leon? Yes, Your Honor. And as we recognize in our brief, we did not raise that claim below, but we believe that this court should exercise its discretion to reach it because it presents a pure question of law. There are no disputes of material fact as to Ms. Leon's involvement in the recommendation and ultimate imposition of the special conditions in October 2018. And so we believe the court can and should address that issue. And so if I could return to qualified immunity. On the question of are there questions of disputed material fact, aren't there questions about exactly what Leon, what the nature of her recommendations was, whether there was any amount of discretion in what she was advising or whether she was following DOCS directives and giving advice to the parole board member? Your Honor, with respect to defendant Leon, we concede that she was required by certain DOCS directives, which plaintiffs cited in their brief, to make recommendations to Ms. Alexander and the other members of the parole board. But Ms. Alexander and the members of the parole board were not bound by those recommendations. By statute, they had independent discretion to ultimately determine what conditions should be imposed, save for the ones that are mandated by statute. Okay. So if you're conceding that Leon, and I'm just talking about Leon for the moment, exercised no discretion in what she recommended to Alexander, doesn't that seriously undercut your argument for absolute immunity? Your Honor, she was bound by DOCS directives to only recommend a subset of the applicable special conditions. For example, the Internet conditions, which I believe are special conditions 20 through 22, 24 through 33. Those conditions she was required to recommend, but others she was not. And those conditions reflect the individualized case-specific analysis that she undertook to recommend. So, for example, special condition 13, which generally prohibits gang affiliation, is a condition that was clearly based on plaintiffs' personal history of having an affiliation with the Bloods gang. So even though there is a subset of special conditions that we concede were mandated or she was required to recommend by DOCS directive, we don't believe that should defeat her absolute immunity because the focus should be on the task she completed as a whole. And as to Defendant Leon, that task was preparing a recommendation which included a holistic, individualized assessment of the plaintiff and then letting Defendant Alexander and her two parole board members to exercise that discretion. Let's say that the parole board, in connection with an application or hearing considering parole, grants parole but imposes conditions 1, 2, 3. And two months later, the Supreme Court says that condition number 1 is unambiguously says it's unconstitutional. What do you think of the parole board's responsibilities in that regard? Your Honor, the scenario you raised implicates a theory of supervisory liability. Presumably, there is someone at either the parole board or DOCS whose job it is to monitor the legal developments, legal developments such as the Supreme Court case you raised in your hypothetical. But what is missing in this case were— Well, if you could deal with my hypothetical— I apologize, Your Honor. It was a hypothetical, so let me get you to deal with the hypothetical. Then you can turn it back to your case if you want. So in that instance, the individual whose specific job duties included monitoring those constitutional developments and correcting pre—and I guess now pre-existing violations of that Supreme Court decision could be held liable under a supervisory theory of liability. You mean the buck doesn't stop with the parole board, the parole board chairman to know which conditions are legal and illegal? This was not an obscure one. This was all over the papers. When you say this one, I assume you're referring to Packingham? Internet—denying internet access to— The Packingham decision, yes. So the first thing I will note is that defendants had no occasion to explore whose duty it was to actually— whose specific job duty it was to keep track of these developments. Isn't the parole board's chair job to be sure that her agency is acting in compliance with the law? That is true, Your Honor. If I'm hitting an agency that's doing something that's illegal, it seems odd to say that, well, we're doing something illegal, but there was somebody in the chain of command who I supervised who's supposed to find out what's legal and tell me. I mean that's not how these agencies are supposed to work. You have a general counsel or whatever, but isn't it the parole board's responsibility to be sure that their directives are in compliance with the law? Your Honor, there most certainly is someone either with the parole board or DOCS, but under the circumstances of this case, we didn't have the opportunity to identify who that was because of the specific— I don't understand. You didn't have the opportunity to identify who that was. I mean you represent the parole board, right? I do, and I did, Your Honor, and unfortunately he was not able to tell me who that was. So you're telling us, you're telling this court that you can't figure out whose job it was in the parole board to ensure that their operations and their decisions were compliant with laws announced by the Supreme Court? Your Honor, there most certainly is someone whose job that is. That's a brave representation to a court. Your Honor, just to clarify my response, there absolutely is someone, again, either with the parole board or DOCS, who does have a job. But you just couldn't find out who it was? I was unable to, Your Honor. You're a mysterious person. Yes, Your Honor, and the second thing I will note is that as to defendant Stanford, who again does not have any active claims involving this appeal, plaintiff did assert a theory of supervisory liability as to her. So the theory that you mentioned where it must be someone's job responsibilities to continuously monitor constitutive developments. He asserted that as to defendant Stanford, but not as to defendants Leon and Alexander. Why would the chairman of the parole board get qualified immunity? She's in charge. Why should she get qualified immunity for maintaining a policy and practice that violated clearly established constitutions? Your Honor, I agree with you that under that circumstance, the chairwoman of the parole board would not get qualified immunity. And it's worth noting that in this instance, she was denied qualified immunity. And the reason that the monetary claims were dismissed against her was for lack of personal involvement. She was not a member of the three-judge panel, and so there was really no personal. But her case is not before us today. Exactly right, Your Honor. Monetary claims were dismissed for lack of personal involvement, and the injunctive claims are proceeding against her. So the concerns you've raised, Judge Parker. What about Alexander? She is just a regular member of the board of parole. She participated in the October 18 decision to deny discretionary release, but then impose the special conditions that are now the basis of this lawsuit. And it could very well be that her job responsibilities also include monitoring constitutional developments and correcting now erroneous sentences. But we did not have that. Is the record unclear as to that? It is, Your Honor, because we reasonably relied on plaintiff's filings and plaintiff's own admissions in which he stated the only basis of his claims as to defendants Leon and Alexander were the October 2018 imposition of the special conditions. And so under the circumstances, I realize in the abstract it sounds kind of ridiculous. But under the particular circumstances here, we didn't have an occasion to investigate whose personal involvement after this court's decision in England, after plaintiff was actually released and the special conditions went into effect. So it's only on appeal that the argument becomes the plaintiff's raised the argument that there was a failure and a duty to monitor the law and make corrections, necessary corrections during the period after a condition is imposed, but before release. That's correct, Your Honor. This isn't a theory of liability they have raised for the first time on appeal. The complaint, which was filed in November 2018, which is only one month after the board's decision in 2018, it could not have, as a practical matter, it could not have included those allegations. But at no point in the proceedings below did plaintiff seek to amend his complaint to add those allegations that relate to once he was subsequently released or when this court decided England. And so I gather that Your Honors have some concern as to whether that is a viable theory going forward. No, the court has the obligation to apply the law as it appears when the court's making, as it is when the court's making its decision. Absolutely, Your Honor. The court couldn't have ignored those Supreme Court decisions. You'd have to think about them and figure out whether they apply, didn't you? Your Honor, it is our position that the Supreme Court decision in Packingham did not clearly establish the claimed First Amendment right. Even though it was ultimately the basis of finding such a right, at the time, the specific circumstances- Please say that again. I'm sure I'm misheard. So the United States decision in Packingham established that registered sex offenders have a First Amendment right to access social media. But based on the reasoning and the specific criminal statute at issue there, there was at least a good faith basis for my clients and other individuals to conclude that that First Amendment right did not necessarily extend to the conditions of supervised release or community supervision. And that only became clear, that would have been an erroneous view when England is decided. That's right, and it's worth noting that some courts actually did adopt the erroneous view. The D.C. Circuit in the United States v. Rock actually opined that Packingham only applied to- did not apply to supervised release conditions and only applied to non-custodial restrictions. And so, I realize I've gone way over time, so if I could just make one quick comment about the qualified immunity. It is our position that the complaint only relies on conduct that occurred in October 2018. And for the reasons I just explained, Packingham, which predated that decision, was insufficiently clear. And England, which did clearly establish that constitutional right, occurred too late. And so that is the basis of our qualified immunity argument. So, just I want to make sure I understand the big picture. If we agree with you and knock out Leon on qualified immunity, and she's not in on the injunctive claim, she's only in on the money claim. And we knock out Alexander, both on the money claim and on the injunctive claim. The plaintiff's allegation for the claim for injunctive relief, to be relieved of these conditions, has the plaintiff been relieved of these conditions at this point? So, sort of, Your Honor. In June 2021, he was arrested for a violation of his supervised release conditions, and he's still- One of the ones that's under challenge or a different one? A different one, I believe. There are allegations that he was physically violent with his wife and then stole $1,000 from her. So, the claims that now there's a clearly established right and somebody should have jumped in and relieved me from these and prospectively should relieve me, those claims would still be alive as against the chair of the parole board, Stanford, against whose claims you're not challenging on appeal. Is that right? That's correct, Your Honor. And to the extent plaintiff has a basis for asserting that against Leon Alexander, we believe the proper procedural route would be to remand this case so that plaintiff could seek leave and seek leave to amend his complaint to properly add those allegations. The parties could then engage in a proper fact finding. Would it be a remand or would we find qualified immunity or absolute immunity based on the complaint as it currently stands, understanding that there may be a new amended complaint that has new allegations that requires to revisit that or require the court to revisit that? Your Honor, I believe the proper procedure would be to grant qualified immunity based on the only claims that were actually pled in the complaint. And again, that would not foreclose plaintiff from seeking relief once this case goes back. Because again, the injunctive relief and also declaratory relief claims against Stanford are going forward no matter what. Your Honor, I'm Kate Doniger. I represent Appellee Leroy Peoples. The single undisputed point in this appeal is that the internet conditions at issue are unconstitutional, that they were unconstitutional when they were imposed on Mr. Peoples half a year after this court's decision in Eaglin, at a minimum, and again two years after this court's decision in Eaglin. When you say when they were imposed, you mean when they were implemented? Yes, when he became subject to the constitutional deprivation that he challenged in his complaints. But not in the actions of the individuals who are identified as defendants in this appeal took the acts that you've challenged? Well, there's a debate about whether or not. There is a debate about that, Your Honor, yes, and I'm happy to turn straight to that. I think appellants argue that Mr. Peoples' complaint below challenged only those initial actions in October 2018. That's not the case. It's very clear from Mr. Peoples' complaint that he challenged the ongoing deprivation that he was going to be subject to when he was released from prison. He challenges the imposition of those conditions on him at the time he was released. His complaint specifically says, when my maximum expiration date arrives on June 7th, 2019, I will be, he continues, subjected to these conditions. That's the actions that he challenged. But it's a 1983 claim, and it's against individuals, and with the exception of Stanford, who's on the hook for sort of a role in a supervisory capacity. Don't you have the burden of identifying the specific actions of the individuals? And I guess we're on summary judgment here, so what was the evidence that you offered of actions following the 2018 actions of Leon and Alexander? Absolutely, Your Honor. So the personal involvement test in a 1983 action is intended to require that there's a tangible connection between the acts of the defendant and the injuries suffered by a plaintiff. And there is evidence in the record to suggest that that was the case here. With respect to Alexander, she, as you know, identified the conditions that were going to be imposed on him at a specific date. Her declaration makes clear she was aware those conditions would be imposed on that specific date, and she has the authority to revoke or modify those decisions as a member of the parole board. With respect to Leon, her own declaration indicates that she conducted pre-release interviews with peoples to explain the conditions, provide guidance on them. And as a general matter, we know that there is some interaction with Mr. Peoples before his release because we know that with respect to the E-stop condition, which was enjoined by a district court, that condition was not imposed on him. The same thing should have happened with respect to these conditions, but it did not. And under this court's precedent, where an official creates a constitutional violation, it has a tangible personal connection to its ongoing imposition, including because they could have but did not take steps to end that violation that they put in place. I think that's sufficient to satisfy the personal involvement test. And Vincent v. Yellick and other cases that we cite in our briefs, those are all cases in which this court held that officials could potentially be liable based on failures to take reasonable steps to comply with the law. I recognize... Yes, Your Honor. Why is it you think we don't have jurisdiction? Yes, Your Honor. So it's well settled that in an interlocutory appeal like this one, the court's jurisdiction is limited to cases where the immunity defense can be established as a matter of law. This is not such a case. Here, a factual determination is a necessary predicate to both immunity claims. And quickly, with respect to qualified immunity, since that's what we were discussing, there's a factual question that was raised by appellants for the first time on appeal about whether or not defendants had sufficient personal involvement as of June 2019. I recognize that Mr. Peoples has some obligation to plead sufficient facts to suggest that that could be the case. But below... It's more than just plead. We're on summary judgment, so it's all for proper evidence. I'm sorry, Your Honor? We're on summary judgment. Yes, correct. It's more than just plead. You have to proffer evidence. Well, yes, Your Honor. But, I mean, this is their motion, and this is their burden. And before the court below, they never argued anything about when the proper time frame was to consider whether the law was clearly established. They never argued whether there was adequate personal involvement. In the court below, they simply argued, without citation to case law, that the conditions didn't violate law. That's a position they've rightfully abandoned here. And nothing in the magistrate or the district court order below suggests that they shared appellant's view that the temporal point of reference should be October 2018 and not June 2019. So this presents a factual question, we believe, based on all of the evidence that I mentioned earlier, that there is a sufficient question at a minimum. There's enough evidence to support the finding that they had adequate personal involvement. But at a minimum, this is a new issue requiring further factual development. And appellants seem to suggest earlier that subremand to the court below on this issue might be necessary. So to return to your question, Judge Parker, that's a question of fact with respect to the qualified immunity claim that divests this court of jurisdiction. With respect to the question- If there's a question of fact, but there's not evidence on either side of it. If there's a vacuum, is that a question of fact that requires remand? Or do we look at who bears the burden of proffering evidence on that question? And if it hasn't been proffered, do they end up holding the bag? Well, I think, Your Honor, that the question of- Let me take a step back. The court below did determine that there was a dispute of fact on the question of qualified immunity. I think that this court can consider whether there are material facts that are in dispute here. And the answer to your question would be that the party with the burden bears the responsibility of coming forward with adequate evidence. But this is defendant's or appellant's summary judgment motion, and they failed to carry their burden here. With respect to, if I may, the absolute immunity question, there is a question of fact that divests this court of jurisdiction, and at a minimum makes clear that the court below was correct to find that they had failed to carry their burden of summary judgment. That is whether Alexander, in fact, had discretion in imposing these conditions. They claim in their briefs and today that that's a question of law. That's citation they cite in executive law. They claim makes clear she had discretion. We don't believe that that's correct, and it's not supported by the record. Can you talk a little bit about the legal framework that supports the premise that whether or not individual conditions are required by law determines whether the nature of what Alexander was doing was quasi-adjudicative versus administrative? Because I don't see that as the standard we've described when describing the distinction between the two. I see it as turning on whether we're adjudicating individual cases versus broader policy. Your Honor, so I think that that is an articulation of the standard that this court and others have used in connection with determining whether judges are acting in a judicial capacity. But the presumption is that a judge is acting in a judicial capacity, and the standard of whether or not they are acting with respect to a case in front of them or not, that is, I think, the distinction that's made with respect to judges. With respect to parole officials who are not judges, the presumption is different. This Court's been very clear that absolute immunity is appropriate only in very rare circumstances when it's required by public policy, and that means two things. First, it means that the official is engaging in some independent exercise of jurisdiction that needs to be protected. If there's no discretion, there's no independent exercise of judgment. The judge suggests that a person in this situation can have absolute immunity for some cases and not for others depending upon whether a special condition is mandated. That seems strange to me. And, you know, this is an easy analogy, but going back to the judges, judges sometimes lack discretion in an individual decision. Mandatory minimums come to mind, and we would never say that that deprives the decision made of being appropriate for immunity. Yes, Your Honor. So with respect to your first point, whether different conditions could be different, I think it is the case that it's possible. This is a fact-specific inquiry, as this Court has made clear. I think it's possible that there could be some circumstances where parole officials are required to impose a set of conditions, in this example, Internet conditions on sex offenders, and that that is not an adjudicative act, and that it is still possible that in other circumstances they might exercise discretion. I'd emphasize, though, that that, I don't believe, is the question before the Court, and I don't believe the Court has to decide that. And the reason for that is because in this situation, not only in order to be entitled to absolute immunity, the official has to be exercising some independent judgment, but also there have to be adequate safeguards in place to protect against improper performance and improper exercise of that judgment. And in this case, with respect to safeguards, the same safeguards apply or don't apply to all of the conditions. And it's very clear, we believe, that there are not adequate safeguards for imposition of special conditions of supervised release. The decision is not made pursuant to an adversarial process. There's no opportunity to appeal those conditions. There's no access to counsel. There's no written explanation of the decision. That is not the case, to be clear, for the decision to grant or deny or revoke parole, which defendants do enjoy absolute immunity for, because there is a right to appeal, and they are required to write a written explanation of their decision, and there is a right to counsel on appeal. Do you agree with, to the extent that we have circuit authority on this question, do you agree with your adversary that we would be departing from that authority not to recognize absolute immunity in the circumstances here for imposing conditions of release? I mean, at least with regard to Alexander. No, Your Honor. I don't believe you'd be departing from any authority. I don't believe there is any authority in this circuit. The circuit has not decided this question. Not in this circuit, but sister circuits. Oh, no, I don't. I think, as our briefs made clear, the sister circuits who have decided this question, the analysis actually was focused on the specific condition at issue. In the Thornton case, I believe it was the Ninth Circuit, looked specifically at the condition and whether the parole officials had discretion granted by statute to decide whether or not to impose that specific condition. I think we're asking the court to undertake the same inquiry here. And in this particular case, it's clear that these conditions were, they were required to impose them, and they don't enjoy absolute immunity as a result. Do you agree with the understanding I came away with from your colleague's argument that if you lose in this appeal, your case or your client's case still goes forward against Commissioner Stanford? You lose your money claims, but your injunctive claims are still there? Yes, that's correct. And are you aware, and I realize we're getting outside the record, are you aware of any steps that have been taken to change the conditions at this point? No, Your Honor, I'm not. And I think that my colleague couldn't identify or did not identify any evidence to suggest that they don't intend to impose the same conditions on Mr. Peoples when he's next released from prison. At this point, we're now three years after Eaglin, I believe five years after Packingham. I think that's extremely problematic. Thank you. Thank you, Your Honor. We'll hear Revetal. I appreciate the court's indulgence. So if I could just briefly address the two purported factual disputes that allegedly deprive this court of jurisdiction. So with respect to qualified immunity, I want to emphasize that we are not just basing, the trial attorney didn't base his litigation strategy solely based on the complaint. As late as October 2020, when plaintiff filed his opposition to the summary judgment motion, he conceded that the only basis of his claims against Leon and Alexander was the original conduct in October 2018. So there really was no basis. Well, I'm confused because you said that the only well-pleaded allegations in the complaint dealt with the initial imposition of the conditions in October. Ms. Doniger, I thought, was reading from the complaint, and the portions she read, as I understood them, talked about ongoing complaint by this defendant concerning the impositions going forward. Your Honor, I understood those allegations. So I'm confused. Can you help me get to the bottom of this? Your Honor, in the portions of the complaint where plaintiff was asked to identify the specific personal involvement of each defendant, he only listed the conduct relating to October 2018 imposition of the special conditions as to Leon and Alexander, and he subsequently affirmed this in his summary judgment opposition. Affirmed what? Affirmed the limited nature of his claims against Leon and Alexander. He made this express admission. Can you give me the record side? I'd like to go back and check it. It should be at pages 12 and 13 of the joint appendix. 12 and 13. Thank you. 12 and 13. Thank you. And so, again, there's really no basis for this first-time appellate amendment of his claims. And so as to the second alleged decision to dispute a fact as to whether defendant Alexander had any discretion in the imposition of special conditions, again, there's statutory authority saying that she has discretion to do so. And this is, again, something that plaintiff himself conceded in his summary judgment opposition. He did not dispute the proposition that Ms. Leon's recommendations are not binding on Ms. Alexander, and he solely contested the legality of those conditions. Could you, on the record side front, the pages you gave were from the complaint. That's right. The pro se complaint with the allegations. I thought you stated a minute ago that as late as October 2020, defendant was conceding that the scope of its claim against these two defendants was limited to. You don't have to give me the page because you may not have it right now, but can you tell me the context and then I'll be able to find it in the record? Yes, Your Honor. So the context was this. In conjunction with the summary judgment motion, defendants included a statement of undisputed facts. And included within that statement were defendants' understandings of plaintiff's claims against each defendant. And so as to Defendant Leon, we wrote the claim is based on the preparation of the ORC recommended special conditions. And as to Alexander, we wrote that it was the determination to set the special conditions of release. And plaintiff agreed to, did not dispute those contentions. And I can also provide the citation in the record. So it's Joint Appendix 108 and 109. That should be the state's, that should be the parole defendant's statement of undisputed facts. And then petitioner's admission is on page 654. I might have those reversed, but those are the relevant pages,  I apologize. Is the internet condition still in place? Your Honor, because petitioner, because plaintiff is currently in custody, it is not literally in place. But it is my understanding that. I'm sorry. So petitioner is currently not on community supervision. He's what? He's not on community supervision. He's being held. He's in jail. That's right, Your Honor.  That's right, Your Honor. And so. So has the condition been taken off of his record? Is it still there? I mean, if he went out, if he got released tomorrow, would the internet condition be one of the conditions he had to comply with? Not necessarily, Your Honor. So when he is subsequently. What does that mean? Oh, I'm sorry. Go ahead. When he is subsequently released again. Let's say he's released tomorrow. Yeah. So the board is going to make another individualized determination as to what conditions should be imposed on him going forward. And actually, as a result of the EDNY litigation resulting from E-Stop there, the board of parole has agreed that for all special conditions going forward relating to these internet restrictions, they will not impose them on a defendant unless there is a particularized showing that those circumstances are warranted based on that defendant's characteristics. So Your Honor, that's unfortunately why I'm giving you an answer of maybe, because they're going to have to do another individualized determination. I guess the answer to my question is they're not automatically. Yes. They're automatically off but may come back on. Is that right? Yes. Or automatically on and may come off, which is it? Automatically off and may come on, I believe, the proper characterization. So unless there are any further questions, I appreciate the panel's time. Thank you. Thank you both. And we will take the matter under a vote.